# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LARRY D. WILSON, # 08456-026, | ) |
| Petitioner, | ) |
| vs. | ) Case No. 17-cv-778-DGW[1] |
| T.G. WERLICH, | ) |
| Respondent. | ) |

# MEMORANDUM AND ORDER

**WILKERSON, Magistrate Judge:**

On July 25, 2017, Petitioner Larry D. Wilson filed his *pro se* Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Doc. 1). Wilson is incarcerated at FCI-Greenville, Illinois, serving a 264-month sentence. This Court stayed the case pending the disposition of Wilson's motion for relief pursuant to 28 U.S.C. § 2255 in the Central District of Illinois. (Doc. 11). The § 2255 motion was ultimately voluntarily dismissed, and Wilson filed an Amended Petition (Doc. 16) in this action on March 5, 2019. Wilson invokes *Mathis v. United States*, – U.S. –, 136 S. Ct. 2243 (2016), to challenge the career-offender sentence enhancement for one of the three offenses to which he pled guilty. He argues that his 1985 Illinois conviction for residential burglary no longer qualifies as a predicate offense for the enhancement because the statutory definition of a "dwelling" at the time encompassed locations that were not included in the definition of "generic burglary." He seeks to be resentenced without the enhancement, and argues that he is entitled to immediate release from custody.

Respondent has answered the Petition (Doc. 28), and Wilson has replied (Doc. 30); the

---

[1] This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. § 636(c). *See* Doc. 22.

1

matter is ripe for disposition. For the reasons discussed below, the Amended Petition (Doc. 16) shall be denied.

## Relevant Facts and Procedural History

### Trial Court Proceedings

In August 2007, Wilson and a co-defendant were indicted on 5 counts relating to a bank robbery in the Central District of Illinois, Case No. 07-cr-20090-MPM-DGB. (Doc. 16, p. 1; Doc. 28-1). On March 3, 2008, Wilson entered a negotiated guilty plea to 3 counts: Count 1 for armed bank robbery (18 U.S.C. § 2113(a) and (d)); Count 2 for possession of a firearm by a felon (18 U.S.C. § 922(g)); and Count 4 for carrying and using a firearm during a crime of violence (18 U.S.C. § 924(c)). (Doc. 27-1; Doc. 28-3). Under the binding plea agreement, Wilson was sentenced to a total of 264 months, consisting of concurrent 180-month terms on Counts 1 and 2, plus a consecutive 84 months for Count 4. (Doc. 28-4).[2]

In arriving at the above sentences, the court adopted the parties' agreement that as to Count 2 (felon in possession) Wilson qualified as an Armed Career Criminal ("ACC") pursuant to 18 U.S.C. § 924(e). This subjected him to a mandatory minimum 15-year (180-month) prison term for that count based on having 3 previous convictions for either drug offenses or violent felonies. With the ACC enhancement, the statute carried an upper limit of a life sentence. (Doc. 27-1, pp. 1, 4; Doc. 28-3, pp. 5, 7). Wilson had earlier been convicted of 3 violent felonies as defined in 18 U.S.C. § 924(e)(2)(B), including residential burglary (Vermilion County Case No. 85-CF-329); and 2 robberies (Vermilion County Case No. 85-CF-358, and Champaign County Case No. 85-CF-1556). (Doc. 27-1, p. 9). Absent the career-criminal enhancement, the firearm possession charge would carry a maximum 10-year term of imprisonment. (Doc. 28-3, p. 5).

---

[2] Wilson was additionally sentenced to a consecutive 12-month term as a result of revocation of his supervised release in another case; that sentence is not at issue in this habeas action. (Doc. 28-4).

Wilson faced a maximum 25-year sentence on the armed bank robbery count (Doc. 28-3, p. 5), and a mandatory consecutive 7-year (84-month) sentence on Count 4 for using or carrying a firearm during the robbery. (Doc. 28-3, p. 6). The statutory range for Count 4 also exposed Wilson to a potential life sentence. (Doc. 27-1, p. 1).

Based on the ACC enhancement for Count 2, Wilson and the government agreed that his statutory mandatory minimum sentence for the combined convictions was 22 years (264 months). (Doc. 28-3, p. 8). The parties further agreed that this minimum exceeded the applicable advisory sentencing guideline range, thus the advisory range became 264 months/22 years. *Id.* The Presentence Report ("PSR") calculated Wilson's advisory guideline range to be 135-168 months' incarceration based on a total offense level of 30 and criminal history category of IV. (Doc. 27-1, p 24). However, because the statutory minimum sentence was 180 months (for Count 2), that became the guideline sentence for the bank robbery and firearm possession counts. *Id.* The PSR further noted that the mandatory-consecutive sentence for Count 4 would be imposed independently according to the statute. *Id.*

**Post-Conviction Proceedings**

Wilson did not file an appeal. (Doc. 16, p. 3). In November 2015, he filed a motion under 28 U.S.C. § 2255 challenging his sentence on the basis of ineffective assistance of counsel. *Id.*; *Wilson v. United States*, Case No. 15-cv-2266-SLD (C.D. Ill.). He amended the motion in 2016 to add a challenge based on *Johnson v. United States*, 135 S. Ct. 2551 (2015). (Doc. 16, p. 3). Appointed counsel further amended the motion, adding a challenge to the use of the residential burglary conviction as an ACC predicate offense. *Id.* After the Supreme Court announced the *Mathis* decision, Wilson ultimately concluded that his claim based on that case would have to be raised in a § 2241 proceeding, and moved for voluntary dismissal of his § 2255

3

motion in the Central District of Illinois. (Doc. 16, pp. 4-5). This action followed.

## Grounds Asserted for Habeas Relief

Wilson argues that his 1985 Illinois residential burglary conviction was improperly counted as a predicate offense to enhance his sentence for Count 2 (possession of firearm by a felon). He relies on the analysis outlined in *Mathis v. United States*, – U.S. –, 136 S. Ct. 2243 (2016), and *United States v. Haney*, 840 F.3d 472, 476 (7th Cir. 2016) (concluding that conviction under 1970s version of Illinois burglary statute, which applied to vehicles such as "housetrailer[s], watercraft, aircraft, motor vehicle[s] . . . [and] railroad car[s]," could not serve as an ACC predicate),

The 1985 Illinois residential burglary statute stated: "A person commits residential burglary who knowingly and without authority enters the dwelling place of another with the intent to commit therein a felony or theft." Ill. Rev. Stat. ch. 38, ¶ 19-3 (1983).[3] At that time, the statutory definition of "dwelling" was "a building or portion thereof, a tent, a vehicle, or other enclosed space which is used or intended for use as a human habitation, home or residence." Ill. Rev. Stat. ch. 38, ¶ 2-6 (1983);[4] *People v. Bales*, 108 Ill. 2d 182, 187, 483 N.E.2d 517, 519 (1985); *People v. Edgeston*, 611 N.E.2d 49, 55-56 (Ill. App. 1993). Wilson claims that because the statute included tents and vehicles as "dwellings," it criminalized more conduct than

---

[3] The current, amended version of the residential burglary statute is found at 720 ILCS 5/19-3. The separate offense of residential burglary was severed from the burglary statute in 1982. *See People v. Edgeston*, 611 N.E.2d 49, 55-56 (Ill. App. 1993).
[4] The definition of "dwelling" was not revised until 1987, when the quoted language became subsection (a) of ¶ 2-6, and subsection (b) was added to ¶ 2-6, to provide a separate definition of "dwelling" applicable only to the residential burglary statute at Ill. Rev. Stat. ch. 38, ¶ 19-3. After this amendment, subsection (b) provided: "For the purposes of Section 19-3 of this Code, 'dwelling' means a house, apartment, mobile home, trailer, or other living quarters in which at the time of the alleged offense the owners or occupants actually reside or in their absence intend within a reasonable period of time to reside." Ill. Rev. Stat. ch. 38, ¶ 2-6 (1987) (now codified at 720 ILCS 5/2-6).

is outlawed in the generic definition of burglary,[5] and it was therefore improper for his 1985 crime to be used to enhance his sentence from the 10-year maximum to a 15-year minimum.

## Grounds for Denial of Relief

Respondent counters that Wilson's written plea agreement included a waiver of his right to bring a collateral attack on his conviction or sentence, and that this waiver bars him from seeking habeas corpus relief in this action. (Doc. 28, pp. 5-7; Doc. 28-3, pp. 11-13; 17-18). Respondent further argues that Wilson's habeas claim fails to satisfy the requirements of the savings clause in 28 U.S.C. § 2255(e). (Doc. 28, pp. 7-13). Finally, he asserts that even if the Court should find that Wilson's Petition fits within the savings clause, he is not entitled to immediate release. (Doc. 28, pp. 13-15).

## Applicable Law

Generally, petitions for writ of habeas corpus under 28 U.S.C. § 2241 may not be used to raise claims of legal error in conviction or sentencing, but are limited to challenges regarding the execution of a sentence. *See Valona v. United States*, 138 F.3d 693, 694 (7th Cir. 1998).

Aside from the direct appeal process, a prisoner who has been convicted in federal court is generally limited to challenging his conviction and sentence by bringing a motion pursuant to 28 U.S.C. § 2255 in the court which sentenced him. A § 2255 motion is ordinarily the "exclusive means for a federal prisoner to attack his conviction." *Kramer v. Olson*, 347 F.3d 214, 217 (7th Cir. 2003). And, a prisoner is normally limited to only *one* challenge of his conviction and sentence under § 2255. A prisoner may not file a "second or successive" § 2255

---

[5] The Supreme Court set forth the generic definition of "burglary" for the purposes of a sentence enhancement under the Armed Career Criminal Act, 18 U.S.C. § 924(e), as: "any crime, regardless of its exact definition or label, having the basic elements of unlawful or unprivileged entry into, or remaining in, a *building or structure*, with intent to commit a crime." *Taylor v. United States*, 495 U.S. 575, 599, (1990) (emphasis added). *See also Mathis v. United States*, 136 S. Ct. 2243, 2250 (2016) (finding Iowa statute, which included "land, water, or air vehicle[s]" among the places which could be burgled, was overbroad as compared with generic burglary).

motion unless a panel of the appropriate court of appeals certifies that such motion contains either 1) newly discovered evidence "sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense," or 2) "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2255(h).

However, it is possible, under very limited circumstances, for a prisoner to challenge his federal conviction or sentence under § 2241. 28 U.S.C. § 2255(e) contains a "savings clause" which authorizes a federal prisoner to file a § 2241 petition where the remedy under § 2255 is "inadequate or ineffective to test the legality of his detention." 28 U.S.C. § 2255(e). *See Hill v. Werlinger*, 695 F.3d 644, 648 (7th Cir. 2012) ("'Inadequate or ineffective' means that 'a legal theory that could not have been presented under § 2255 establishes the petitioner's actual innocence.'") (citing *Taylor v. Gilkey*, 314 F.3d 832, 835 (7th Cir. 2002); *see also United States v. Prevatte*, 300 F.3d 792, 798-99 (7th Cir. 2002). The Seventh Circuit construed the savings clause in *In re Davenport*, 147 F.3d 605, 611 (7th Cir. 1998): "A procedure for postconviction relief can be fairly termed inadequate when it is so configured as to deny a convicted defendant *any* opportunity for judicial rectification of so fundamental a defect in his conviction as having been imprisoned for a nonexistent offense." In other words, "there must be some kind of structural problem with section 2255 before section 2241 becomes available." *Webster v. Daniels*, 784 F.3d 1123, 1136 (7th Cir. 2015).

The Seventh Circuit has explained that, in order to fit within the savings clause following *Davenport,* a petitioner must meet three conditions. First, he must show that he relies on a new statutory interpretation case rather than a constitutional case. Secondly, he must show that he relies on a decision that he could not have invoked in his first § 2255 motion *and* that case must

apply retroactively. Lastly, he must demonstrate that there has been a "fundamental defect" in his conviction or sentence that is grave enough to be deemed a miscarriage of justice. *Brown v. Caraway*, 719 F.3d 583, 586 (7th Cir. 2013). *See also Brown v. Rios*, 696 F3d 638, 640 (7th Cir. 2012).

## **Analysis**

The Court finds Respondent's first argument, based on the waiver of Wilson's right to collaterally attack his sentence, to be dispositive of this matter.

After reciting that Wilson has a right to collaterally attack his conviction or sentence (Doc. 28-3, pp. 11-12), the plea agreement states:

> 33. Regardless of any advice his attorney has given him one way or the other, in exchange for the concessions made by the United States in this Plea Agreement, the defendant hereby knowingly and voluntarily waives his right to challenge any and all issues relating to his plea agreement, conviction and sentence, including any fine or restitution, in any collateral attack, including, but not limited to, a motion brought under Title 28, United States Code, Section 2255. The defendant acknowledges and agrees that the effect of this waiver is to completely waive any and all rights and ability to appeal or collaterally attack any issues relating to his conviction and to his sentence so long as the sentence is within the maximum provided in the statutes of conviction.

(Doc. 28-3, pp. 12-13).

There is no doubt that a plea agreement may include a valid waiver of the right to appeal and to file a collateral attack, and that such waivers are generally enforceable, with limited exceptions. *Solano v. United States*, 812 F.3d 573, 577 (7th Cir. 2016). The limited exceptions are where the plea agreement itself was involuntary, the defendant argues ineffective assistance of counsel with regard to the negotiation of the plea, the sentencing court relied on a constitutionally impermissible factor such as race, or the sentence exceeded the statutory maximum. *Keller v. United States*, 657 F.3d 675, 681 (7th Cir. 2011). Wilson argues in his reply that the last exception applies in his case. (Doc. 30, pp. 2-16).

A waiver of the right to bring a collateral attack on a conviction or sentence bars a § 2241 petition; the waiver does not make the remedy afforded by § 2255 inadequate or ineffective so as to open the door to a § 2241 petition. *Muse v. Daniels*, 815 F.3d 265, 266 (7th Cir. 2016). Further, a subsequent change in the law does not render an appeal waiver involuntary. *United States v. Vela*, 740 F.3d 1150, 1151 (7th Cir. 2014).

The Seventh Circuit has enforced appeal waivers against challenges to career offender designations. *United States v. Smith*, 759 F.3d 702 (7th Cir. 2014); *United States v. McGraw*, 571 F.3d 624 (7th Cir. 2009); *United States v. Standiford*, 148 F.3d 864 (7th Cir. 1998). *McGraw* is instructive here. Raising a similar claim as in the instant Petition, McGraw argued that the convictions used to categorize him as a career offender under the sentencing guidelines no longer constituted crimes of violence after *Begay v. United States*, 553 U.S. 137 (2008). The Seventh Circuit enforced the waiver, noting that "We have consistently rejected arguments that an appeal waiver is invalid because the defendant did not anticipate subsequent legal developments." *McGraw*, 571 F.3d at 631.

Wilson argues that his sentence on Count 2 exceeded the statutory maximum, because the enhancement based on his Illinois residential burglary conviction was improperly applied. Respondent asserts that a "nearly identical argument" was rejected by the Seventh Circuit in *United States v. Carson*, 855 F.3d 828 (7th Cir. 2017). *See also United States v. Worthen*, 842 F.3d 552, 555 (7th Cir. 2016).

Like Wilson, the defendant in *Carson* pled guilty to possession of a firearm as a felon (§ 922(g)) and stipulated in the plea agreement that his prior convictions raised his statutory minimum sentence to 15 years for that charge. He was then given a sentence in excess of that term (188 months). *Carson*, 855 F.3d at 830. He later argued that his sentence exceeded the

8

statutory maximum because his prior convictions were improperly relied upon to raise the penalty to the 15-year-minimum level. The Seventh Circuit enforced Carson's waiver of his right to appeal, finding that his argument to escape the waiver was "entirely circular." *Carson*, 855 F.3d at 831 (quoting *Worthen*, 842 F.3d at 555). The court noted that it "could not determine the lawfulness of the defendant's sentence without resolving his entire appeal." *Id.* The *Carson* court continued:

> [I]f the very argument raised in apparent violation of an appeal waiver must be decided on the merits in order to know whether the sentence is unlawful (and thus the waiver is unenforceable), we would "eviscerate the right to waive an appeal" by creating a rule "that an appeal waiver is enforce-able unless the appellant would succeed on the merits of his appeal." *Worthen,* 842 F.3d at 555.

*Carson*, 855 F.3d at 831.

In Wilson's case, the very clause which he asserts provides him with an "escape hatch" to avoid the application of the waiver, is the key matter of contention in his habeas challenge. Wilson gave up his right to mount a collateral attack, "so long as the sentence is within the maximum provided in the statutes of conviction." (Doc. 28-3, p. 13). Just as in *Carson* and *Worthen*, this Court would have to resolve the merits of Wilson's *Mathis* challenge to his residential burglary predicate offense, in order to determine whether or not his sentence was within the statutory maximum. Wilson's 15-year/180-month sentence on the felon-in-possession count was well under the statutory maximum of life after the ACC enhancement. 18 U.S.C. § 924(e). That sentence could only be found in excess of the statutory maximum if the Court were to accept the argument that Wilson's 1985 residential burglary conviction was improperly used to apply the ACC enhancement – as the non-enhanced penalty for Count 2 had a statutory maximum of 10 years. (*See* Doc. 30, p. 4). This is the exact scenario in which *Carson* and *Worthen* instruct that a collateral-attack waiver must be enforced. It is impossible to determine

9

whether Wilson's enhanced sentence amounts to a miscarriage of justice without resolving the merits of his *Mathis*-based claim.

Wilson's attempts to distinguish his case from the above precedents are unavailing. Despite the fact that his signed plea set forth his specific agreement that the Armed Career Criminal enhancement subjected him to a mandatory minimum 15 years in prison (Doc. 28-3, pp. 7), he claims that he was not given fair notice of which of his prior convictions formed the basis for the enhanced penalty. (Doc. 30, p. 5). However, the predicate convictions were listed in the Presentence Report. (Doc. 27-1, p. 9).

Wilson compares his case to *United States v. Gibson*, 356 F.3d 761 (7th Cir. 2004), where the appeal waiver in a binding plea agreement was not enforced. (Doc. 30, pp. 11-14). The language in Gibson's waiver contained the same "escape hatch" language as Wilson's, barring a challenge so long as the sentence is "within the maximum provided in the statute(s) of conviction." (Doc. 30, p. 13); *Gibson*, 356 F.3d at 765. However, the similarity ends there. The appellate court declined to enforce Gibson's waiver because the agreed-upon sentence of over 21 years in that case obviously exceeded the statutory 5-year maximum sentence for the single count to which Gibson pled guilty. Unlike in Wilson's case, the court did not need to engage in any analysis of the applicable statute in order to see that the sentence imposed was well above the statutory cap. *Gibson*, 356 F.3d at 765; *see also Carson*, 855 F.3d 828, 831 (7th Cir. 2017).

Wilson further argues, based on the government's initial response to his § 2255 motion, that the government recognizes that the waiver language allows him to bring a post-conviction challenge based on a change of law that would alter the statutory maximum penalty for the offense. (Doc. 30, pp. 7-8, 11). That § 2255 response argued that Wilson's waiver precluded relief, stating:

> Because his sentence was within the statutory maximum (<u>because *Johnson* has no impact on his ACC designation</u>), pursuant to the terms of the waiver, petitioner has waived his right to collaterally attack his sentence on any grounds other than that the waiver was not voluntary or counsel was ineffective in connection with negotiating the waiver.

(Doc. 30, p. 36); *Wilson v. United States*, Case No. 15-cv-2266 (C.D. Ill., Doc. 12, filed Sept. 2, 2016) (emphasis added). Wilson takes the government's reference to *Johnson*, which was decided after his sentencing, as acknowledgement that the waiver language allows him to bring a post-conviction challenge asserting that his sentence exceeded the maximum provided in the statute.

Respondent obviously disagrees with this interpretation, as set forth in his Response (Doc. 28). Furthermore, the government's § 2255 response quoted above was filed before the Seventh Circuit announced its 2017 opinion in *Carson* and its November 2016 opinion in *Worthen*, on which Respondent bases his current argument. The § 2255 motion and the instant § 2241 Petition are separate and distinct proceedings, and Respondent herein is not bound by arguments that were made or not made in the § 2255 action.

Additionally, Wilson claims that by arguing against the merits of his *Mathis* claim, Respondent "waived the collateral attack waiver defense." (Doc. 30, p. 16). This is not the case; a party is permitted to set forth arguments in the alternative without negating either of them.

Because the waiver contained in Wilson's plea agreement bars this collateral attack, it is not necessary for the Court to consider the merits of Wilson's *Mathis* claim or Respondent's arguments about the availability of the savings clause to mount such an attack.

## Conclusion

For the foregoing reasons, Wilson's Amended Petition for habeas relief under 28 U.S.C. § 2241 (Doc. 16) is **DENIED**. This cause of action is **DISMISSED WITH PREJUDICE**. All

pending motions are **DENIED AS MOOT**. The Clerk of Court shall enter judgment accordingly.

If Petitioner wishes to appeal the dismissal of this action, his notice of appeal must be filed with this Court within 60 days of the entry of judgment. FED. R. APP. P. 4(a)(1(A). A motion for leave to appeal *in forma pauperis* ("IFP") must set forth the issues Petitioner plans to present on appeal. *See* FED. R. APP. P. 24(a)(1)(C). If Petitioner does choose to appeal and is allowed to proceed IFP, he will be liable for a portion of the $505.00 appellate filing fee (the amount to be determined based on his prison trust fund account records for the past six months) irrespective of the outcome of the appeal. *See* FED. R. APP. P. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725-26 (7th Cir. 2008); *Sloan v. Lesza*, 181 F.3d 857, 858-59 (7th Cir. 1999); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998). A proper and timely motion filed pursuant to Federal Rule of Civil Procedure 59(e) may toll the 60-day appeal deadline. FED. R. APP. P. 4(a)(4). A Rule 59(e) motion must be filed no more than twenty-eight (28) days after the entry of the judgment, and this 28-day deadline cannot be extended. Other motions, including a Rule 60 motion for relief from a final judgment, do not toll the deadline for an appeal.

It is not necessary for Petitioner to obtain a certificate of appealability from this disposition of his § 2241 petition. *Walker v. O'Brien*, 216 F.3d 626, 638 (7th Cir. 2000).

**IT IS SO ORDERED.**

**DATED: June 19, 2019**

                                                  s/ Donald G. Wilkerson
                                                  **Donald G. Wilkerson**
                                                  **United States Magistrate Judge**